## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISON

| | | |
|---|---|---|
| **CHASE WILSON,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 5:20-cv-1297** |
| **v.** | § | |
| | § | |
| **UNITED SERVICES** | § | **JURY TRIAL DEMANDED** |
| **AUTOMOBILE** | § | |
| **ASSOCIATION,** | § | |
| | | |
| **Defendant.** | | |

## COMPLAINT

Plaintiff CHASE WILSON ("Plaintiff"), by and through his attorneys, brings this action for damages and other legal and equitable relief from Defendant, UNITED SERVICES AUTOMOBILE ASSOCIATION. ("Defendant" or "USAA"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.* ("§ 1981"), the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("TLC"), and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.      This is an action brought by Plaintiff seeking damages from Defendant for acts of discrimination, hostile work environment, and retaliation. Defendant's acts are in violation of Title VII, § 1981, the TLC, and any other cause(s) of action that can be inferred from the facts set forth herein.

2.      Defendant employed Plaintiff at their headquarters located in San Antonio, Texas. During Plaintiff's employment with Defendant, Plaintiff was subjected to racial remarks, racial slurs, discriminatory treatment, and retaliation from his supervisors and co-workers.

**ORIGINAL COMPLAINT**

1

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq*., as amended, and (iii) 42 U.S.C. §§ 1981 *et seq*., as amended.

4.      The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business and resides in this district.

## PARTIES

6.      Plaintiff is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, a resident of Bexar County, Texas, and a Black citizen of the United States of America.

7.      At all relevant times, Plaintiff was Defendant's employee and therefore covered by Title VII, § 1981, and the TLC.

8.      Defendant is located at 9800 Fredericksburg Road in Bexar County, Texas. Upon information and belief, Defendant employs over five-hundred (500) persons.

**ORIGINAL COMPLAINT**

9.      During all relevant times, Defendant has been an employer covered by Title VII, § 1981, and the TLC.

10.     Defendant transacted and continues to transact business in Texas by, among other things, employing persons at its facility located within Texas and within this judicial district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

11.     Plaintiff, who has herein alleged claims pursuant to Title VII, has timely filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which constitutes a cross-filing with the Texas Commission on Human Rights.

12.     Plaintiff received his Notice of Right to Sue letter from the EEOC prior to the filing of this Complaint. On or around August 7, 2020, the EEOC mailed Plaintiff his Notice of Right to Sue letter.

## STATEMENT OF FACTS

13.     In or around October 2010, Plaintiff first started working for Defendant as a claims adjuster at their San Antonio, Texas headquarters. Since at least 2016, Plaintiff has been subjected to racial remarks, racial slurs, discriminatory treatment, hostile work environment, and retaliation.

14.     Throughout Plaintiff's employment, he met or exceeded expectations as an employee, coworker and peer, being nominated by his coworkers at least three times for USAA employee Diamond Awards. Plaintiff rose quickly within the company and was promoted to manager in May 2014. Plaintiff was being groomed by the then Director of claims to take over her position after her retirement. In his first year in a managerial role, Plaintiff developed and led a new company initiative which increased his department's revenue by fifty percent.

15.     In or around June 2015, Plaintiff was moved from his department to another department, with no warning and against his preferences. One of the only Black managers in his

**ORIGINAL COMPLAINT**

department at the time, Plaintiff was the only manager in the department subjected to such involuntary job transfers. Being one of the higher performing team members, Plaintiff was assured it had nothing to do with his performance. Plaintiff continued doing his job at the highest level but was unhappy in his new role. Within a matter of weeks, several of Plaintiff's coworkers informed him that other team members were referring to Plaintiff as "the angry Black man" behind his back. Plaintiff discussed the issue at length in multiple conversations with his supervisor at the time. Upon information and belief, the supervisor took no action and the situation was never addressed by management in any way.

16.     In or around June 24, 2016, Plaintiff submitted his two weeks' notice, alleging he as a Black manager was substantially underpaid in comparison to his white and Hispanic coworkers with less experience. On the last day of his two weeks' notice, Plaintiff's supervisor offered Plaintiff a position on a rotating interview team, which was considered a demotion, to give Plaintiff time to consider other roles within the company.

17.     On July 11, 2016, Plaintiff was told by upper management Defendant would examine his complaint of racially discriminatory pay. Plaintiff agreed to stay on and take the new role with the expectation of finding another role within the company and a promise of adequate compensation compared to his white or Hispanic peers.

18.     In or around August 2017, Plaintiff's supervisor informed him that his rotating interview team was being disbanded and he would be moved to his previous department as a claims manager. Upon information and belief, the rotating interview team otherwise stayed together, and Plaintiff was the only employee subjected to another position change.

19.     In early February 2018, Plaintiff fielded an escalation call with a customer who berated Plaintiff and said, "This is why I shouldn't be with USAA, because they hire you fucking

**ORIGINAL COMPLAINT**

niggers…I'm cancelling you because you've got all these niggers working there." Plaintiff finished the call professionally and sent an email to several of his supervisors about it. Plaintiff was told, "these things unfortunately happen," and to focus on doing his job.

20.     In or around February 2018, Rolando Maldonado ("Mr. Maldonado") was named as Plaintiff's new supervisor. In their initial one-on-one meeting, Plaintiff told Mr. Maldonado he might want to "get out in front of" another manager Frank Labuda ("Mr. Labuda") as he had a well-known reputation within the company for poor word choice and making offensive comments. Mr. Labuda was also known to retaliate against female employees when they refused to date him.

21.     In or around the week of May 14, 2018, Plaintiff, the only Black manager on his team at that time, and other managers, rotated daily as acting-director, as their usual director, Mr. Maldonado, was in meetings with USAA executives. Plaintiff was scheduled to be the acting director on Wednesday and Thursday. Plaintiff was the only Black employee scheduled to rotate as director. On Wednesday morning, Plaintiff was at his desk in the USAA office when Mr. Labuda walked up and said to Plaintiff, "Oh we've got N.W.A. as director today" in front of a group of Plaintiff's peer managers and several direct reports. N.W.A. is a famous all Black musical group which stands for "Niggaz Wit Attitudes."

22.     That same day, another Black employee, Derrick Jones ("Mr. Jones"), who overheard Mr. Labuda's comments sent Plaintiff a message asking if Mr. Labuda really called Plaintiff "N.W.A." . Plaintiff informed Mr. Jones he heard Mr. Labuda correctly. Mr. Jones informed Plaintiff that he was going to report the inappropriate and racist comment.

23.     Later that day, Mr. Jones reported Mr. Labuda's racist comments to the Employee Relations department at USAA.

**ORIGINAL COMPLAINT**

24.     On Thursday, Mr. Jones approached Plaintiff as he arrived and told him management removed Plaintiff as Thursday's director and replaced him with Mr. Labuda. Later that day Mr. Labuda tried to deflect what he said by stating to Plaintiff in a private conversation that he downloaded the N.W.A. movie the night before and he only intended to make the point that Plaintiff was the "gangster" director.

25.     On May 18, 2018, Plaintiff and Mr. Jones were called into a meeting with Mr. Maldonado and his supervisor, Odom Wu ("Mr. Wu") Assistant Vice President of Claims. Plaintiff and Mr. Jones were told "We all have to do better" in reference to Mr. Labuda's racist comments. Mr. Wu and Mr. Maldonado then told Plaintiff and Mr. Jones that Mr. Labuda had been given "the sternest restrictions possible" but he remained a manager. Plaintiff and Mr. Jones explained why Mr. Labuda's comments were racist and inappropriate, and expressed that if they as Black men had been the offenders, they would have been terminated on the spot. Plaintiff pointed out to Mr. Maldonado in front of Mr. Wu that he had warned Mr. Maldonado months earlier about Mr. Labuda's habit of inappropriate conduct in the workplace.

26.     Following the incident, Mr. Labuda retaliated against Plaintiff and others he perceived had reported him by displaying a negative attitude towards Plaintiff and continually complaining to coworkers that he couldn't "say what I want to say."

27.     In or around Summer 2018, Plaintiff's Hispanic supervisor, Mr. Maldonado, began retaliating against Plaintiff for reporting Mr. Labuda's racist comments. Mr. Maldonado began requiring Plaintiff, the only Black manager, to sit up front in managers meetings. Plaintiff was the only manager not allowed to bring his cell phone into meetings in order to take notes. Mr. Maldonado criticized Plaintiff for speaking too loud in meetings, but also criticized Plaintiff if he did not have questions during meetings.

**ORIGINAL COMPLAINT**

6

28.     Mr. Maldonado also started taking Plaintiff's job duties from him and delegating them to other employees. Mr. Maldonado required Plaintiff to seek out Mr. Maldonado's approval to perform common tasks and began criticizing Plaintiff's physical appearance and attire. For example, Mr. Maldonado requested Plaintiff not wear his Apple watch in the meetings as to not give off a bad impression. On another occasion, Plaintiff was one of at least five (5) employees wearing Nike branded shirts, but the only one asked to turn his shirt inside out by Mr. Maldonado. Plaintiff was the only manager of Mr. Maldonado's approximately 11 direct reports given such restrictions and criticisms. This retaliatory treatment in matters large and small by Mr. Maldonado against Plaintiff became a near-daily occurrence from the time that Plaintiff complained about Mr. Labuda's "N.W.A." remark until Plaintiff's constructive discharge approximately a year later in May 2019.

29.     On or around July 17-18, 2018, Mr. Labuda asked Plaintiff if he saw the news that the National Football League reinstated "that N.W.A. guy" in reference to Greg Hardy, a Black football player who joined Mixed Martial Arts ("M.M.A."). Upon information and belief, Mr. Labuda is well aware of the distinction between N.W.A. and M.M.A., as he takes frequent trips to M.M.A. fights in Las Vegas, Nevada. Upon information and belief, Mr. Labuda intentionally made the reference to intimidate and retaliate against Plaintiff.

30.     Due to Mr. Maldonado's retaliation for Plaintiff's previous complaint, Plaintiff approached a different supervisor, Ky Osborne ("Ms. Osborne") and reported Mr. Labuda's most recent racist comments. Ms. Osborne is Mr. Wu's supervisor and head of the USAA Non-Injury Claims Department.

31.     On or around August 23, 2018, Mr. Labuda was terminated.

**ORIGINAL COMPLAINT**

32.     Days later, Mr. Jones was subjected to a retaliatory termination on August 28, 2018. The alleged reason for his termination was pretext, as it was a common mistake regarding internal company surveys for which many other white or Hispanic employees were not terminated.

33.     In or around November 2018, USAA supervisors took a group photo for Veterans Day which was distributed company wide. Christina Rodriguez, Mr. Jones' former supervisor who is close friends with Mr. Labuda, wrote Mr. Labuda's initials "FL" on her hand for the picture. Upon information and belief, this was done to intimidate Plaintiff for reporting Mr. Labuda's racist comments.

34.     In November 2018, Plaintiff flagged unethical conduct by a white USAA employee Kevin Kennedy (Mr. Kennedy), which Plaintiff discovered in a customer file within his workload. Plaintiff sought help from Mr. Maldonado, who refused and told Plaintiff he was overreacting. In retaliation, Mr. Kennedy responded by digging into Plaintiff's past work product to accuse him of wrongdoing. Mr. Kennedy called and berated Plaintiff, who ended the call for fear of further escalation. Mr. Kennedy then sent a disparaging and critical email to Plaintiff and his supervisors. Mr. Maldonado disciplined Plaintiff by removing the customer file in question from Plaintiff's workload and gave it to a less experienced employee.

35.     In or around November 2018, Plaintiff went to Employee Relations regarding Mr. Kennedy and Mr. Maldonado's conduct. Less than a week later, Employee Relations told Plaintiff they concluded their investigation and while he was right, everything would be handled internally and confidentially. Upon information and belief, no employees were reprimanded or punished.

36.     In February 2019, Plaintiff sat down with Mr. Maldonado for an annual review. Mr. Maldonado told Plaintiff that his team was performing extremely well, but then spent the remainder of the meeting only commenting negatively on Plaintiff's choice of work attire and

**ORIGINAL COMPLAINT**

documentation skills. Mr. Maldonado said Plaintiff's documentation was "a detriment to the company." Three days later, Plaintiff's documentation skills were used as a stand-out example in a meeting with the USAA executive management group of how proper documentation can help aid USAA's success.

37.     On February 28, 2019, Plaintiff wore a t-shirt which read "Danger: Educated Black Man" as a reference to Black History Month, which he wore previously multiple times without issue. Mr. Maldonado pulled Plaintiff aside near the end of the day and told Plaintiff it made him unapproachable. Plaintiff suggested he go home for the day, as it was nearly 5p.m.  Mr. Maldonado rejected Plaintiff's suggestion and instead forced Plaintiff to put on a different shirt and walk back into the office in front of his peers, humiliating him. Upon information and belief, no other USAA employees were disciplined for their attire by Mr. Maldonado during Plaintiff's tenure and branded or graphic t-shirts were commonplace within the office.

38.     In or around April 2019, Plaintiff ordered one of his employees to execute an unusually large insurance release, which was in line with USAA policy, after doing lengthy due diligence within the company. Mr. Maldonado criticized and questioned Plaintiff's due diligence and went behind his back to verify his work. Mr. Maldonado then gave Plaintiff a directive on handling the insurance release in a manner outside USAA's company guidelines, which Plaintiff refused to do. Mr. Maldonado's daily retaliatory harassment and bullying, as described above in paragraphs 27 and 28, only accelerated after this incident.

39.     After continued discriminatory treatment and repeated retaliation, on or around May 7, 2019, Plaintiff was constructively discharged.

40.     On or around May 17, 2019, Plaintiff called USAA Employee Relations to inquire about his benefits and was informed he had been marked ineligible for rehire.

**ORIGINAL COMPLAINT**

41.     On or around May 27, 2019, Plaintiff was informed by USAA Employee Relations that he should not have been marked ineligible for rehire, as doing so under Plaintiff's circumstances was against USAA policy. Upon information and belief, Mr. Maldonado marked Plaintiff as ineligible for rehire after more than 8 years in good standing as a final act of discrimination and retaliation.

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Discrimination)**

42.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

43.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Defendant has engaged the practice of discrimination with respect to the terms and conditions of Plaintiff's employment.

44.     Plaintiff's requests for relief are set forth below.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Hostile Work Environment)**

45.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

46.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Plaintiff was subjected to a hostile work environment on the basis of his race.

47.     Plaintiff's requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Retaliation)**

**ORIGINAL COMPLAINT**

48.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

49.     Plaintiff lodged complaints with Defendant regarding the discrimination and hostile work environment to which he was subjected, and as such, engaged in protected activity under Title VII.

50.     Defendant retaliated against Plaintiff by, among other things, subjecting him to unwarranted discipline and a retaliatory termination.

51.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

52.     Plaintiff's requests for relief are set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.*
(Discrimination)**

53.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

54.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.*, as Defendant has engaged the practice of discrimination with respect to the terms and conditions of Plaintiff's employment.

55.     Plaintiff's requests for relief are set forth below.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.*
(Hostile Work Environment)**

56.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

57.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866,

**ORIGINAL COMPLAINT**

42 U.S.C. §§ 1981 *et seq.*, as Plaintiff was subjected to a hostile work environment on the basis of his race.

58.    Plaintiff's requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.***
**(Retaliation)**

59.    Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

60.    Plaintiff lodged complaints with Defendant regarding the discrimination and hostile work environment to which he was subjected, and as such, engaged in protected activity under § 1981.

61.    Defendant retaliated against Plaintiff by, among other things, subjecting him to unwarranted discipline and a retaliatory termination.

62.    The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.*

63.    Plaintiff's requests for relief are set forth below.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Discrimination)**

64.    Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

65.    The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as Defendant has engaged the practice of discrimination with respect to the terms and conditions of Plaintiff's employment.

66.    Plaintiff's requests for relief are set forth below.

**ORIGINAL COMPLAINT**

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
### The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*
### (Hostile Work Environment)

67.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

68.     The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as Plaintiff was subjected to a hostile work environment on the basis of his race.

69.     Plaintiff's requests for relief are set forth below.

## AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF
### The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*
### (Retaliation)

70.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

71.     Plaintiff lodged complaints with Defendant regarding the discrimination and hostile work environment to which he was subjected, and as such, engaged in protected activity under the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*

72.     Defendant retaliated against Plaintiff by, among other things, subjecting him to unwarranted discipline and a retaliatory termination.

73.     The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*

74.     Plaintiff's requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 et seq.; the

**ORIGINAL COMPLAINT**

1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a et seq.; Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§ 12111 *et seq.*; the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*;

B.  All damages which Plaintiff has sustained as a result of Defendant's conduct, including back pay, front pay, benefits, general and specific damages for lost compensation, and job benefits he would have received but for Defendant's discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

C.  Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless, and/or intentional conduct;

D.  Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

E.  Pre-judgment and post-judgment interest, as provided by law;

F.  That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

G.  Granting Plaintiff other and further relief as this Court finds necessary and proper.

Plaintiff also seeks injunctive relief, including, but not limited to:

H.  Training on the subject of employment discrimination for all of Defendant's employees;

I.  Implicit bias training for all managers conducted by reputable outside vendors;

J.  Supervisory discipline up to and including termination for any supervisor who engages

**ORIGINAL COMPLAINT**

14

in unlawful discrimination;

K.  Active monitoring of the work areas to ensure compliance with discrimination policies;

L.  Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief; and

Plaintiff further demands that he be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: November 5, 2020                              Respectfully submitted,


Holt M. Lackey
Texas State Bar No. 24047763
hlackey@equalrights.law
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
**Ellwanger Law LLLP**
8310-1 N. Capital of Texas Hwy.
Suite 190
Austin, Texas 78731
Telephone: (737) 808-2260
Facsimile: (737) 808-2262

**COUNSEL FOR PLAINTIFF**

**ORIGINAL COMPLAINT**